May it please the court, my name is Jack Sholkoff and I represent the appellants in this case. I'd like to reserve five minutes for rebuttal. The trial court erred in refusing to enforce the arbitration provision contained in the incentive bonus agreement. This court must review the district court's decision on a de novo basis and we believe that in doing so we'll reverse the district court. The trial court misinterpreted the IBA and the associated arbitration rules and made several legal errors which we've explained in our briefs. On Monday, the appellee filed a supplemental authority, Morris v. Ernst & Young, a case that was issued by this court after the briefing was completed in this case. We yesterday filed a brief response as well as submitting additional authority. The appellee contends that under Morris the arbitration agreement cannot be enforced but Morris really in the context of this case is not only not applicable but a red herring because the argument upon which Morris' base was waived was never brought and never raised in district court. By citing Morris, the appellee now for the first time in this case is arguing that the incentive bonus agreement violates the National Labor Relations Act. At no time during the district court proceedings or in her answering brief did the appellee ever raise this issue. So whatever the applicability of Morris may be and we believe it's distinguishable, the appellee waived her right to make that argument. In fact, this court has dealt with a similar issue in one of the authorities that we submitted yesterday, Muhammad v. Uber Technologies. Can I take you to the confidentiality charge, I mean confidentiality provisions? With regard to the confidentiality... Let me ask you this, if we were, just this is a hypothetical, but if we were to conclude that the confidentiality provision is unconscionable, is the agreement permeated with unconscionability or may we still sever any unconscionable provisions and enforce the agreement to arbitrate? The court could certainly just strike the confidentiality rule that's contained in the arbitration rules. We don't believe that the confidentiality provision is unconscionable. We think that the California cases that have looked at this that are more recent than the courts, this court's ruling on confidentiality, specific Ting and Davis, those cases predate more recent cases, and specific Sanchez v. Carmax, which looked at a similar confidentiality provision and enforced it. But to answer Your Honor's question, if this court were to find the confidentiality provision was unconscionable, this court could certainly and should certainly, if that was the court's decision, just strike it and sever it. Okay, but what about the two strikes and you're out? Well, I'm not sure that that's what really the law is. The law in California is that certainly if there is one unconscionable provision, it is an abuse of discretion not to strike it. The courts don't say that they're beyond that. The California courts don't say that if there is more than one, that it is automatically permeated with unconscionability and therefore unstrikeable. I think Judge Kuda has a question. Getting back to the confidentiality clause, we have the series of cases, I guess it was Davis, Ting, Pokorny, and then we have this case Kilgore, a more recent case, which seems to say that confidentiality clause is, the enforceability of that is distinct from the enforceability of the arbitration clause in general. Is that inconsistent with our prior cases or what do we do with that language in Kilgore? Well, I think that the language in Kilgore also has to be viewed since ultimately this is an issue of California law. And I think that we can look for guidance as to confidentiality agreements from the California courts of appeal. So you're saying we should rely on CARMAX and that supersedes our prior cases? Precisely. So those cases, I mean essentially, don't you have to say that those cases got California law wrong while they may be enforceable in that case with the developments that you're asking us to do that and this is diversity, right? What I'm saying is yes, to answer your question is yes, that certainly the additional information that we have from the California courts that is subsequent to the decisions of this court indicate that the California courts look at confidentiality differently than this court did. And this is an issue of California law. And so the California courts are certainly persuasive evidence. Now I understand that this court is not bound by the decisions of the California courts of appeal and only the California Supreme Court. However, the district court and this court is when looking at California law supposed to make its best guess as to what the California Supreme Court will do with regard to California law. And what we know is that the California courts of appeal interpreting California law look at a confidentiality provision like this and don't find it unconscionable. When I look back at those Ninth Circuit cases, I didn't see that they were citing any California Supreme Court cases or even any California cases. Is that right? The Ninth Circuit authorities? The Ninth Circuit authorities? Are they reflecting California law at the time? I don't believe so. I think that they were giving their best guess as to what California law would be in their opinion. And I think that in view of the California authorities that that is, in our view, a more compelling decision-making authority than what this court may have done without the benefit of California law. Going back to Morris briefly, that in the Muhammad v. Uber case, the plaintiffs in those cases sought at the last minute to raise the National Labor Relations Act issue. And this court in footnote 6 said it's too late. It's waived. You can't bring it. You had to bring it in your answering brief. And I would just point out that one of the cases that both sides have relied upon in this case was the Grabowski v. C.H. Robinson case that was decided by the Southern District of California. And that case enforced the arbitration agreement. In that case, the issue of the National Labor Relations Act was raised by the same counsel who was representing the plaintiff in that case as representing the plaintiff in this case. So it's very clear there was a deliberate effort or deliberate decision in this case not to raise that in district court. And it's too late to raise it now. I know there's a circuit split on that issue, and there's been cert petitions pending. Do you know if the cert petition has been granted yet? Not yet. I checked yesterday. And I know that with regard to the Ninth Circuit decision, that I believe that as of two days ago it had been fully the cert proceedings had been fully briefed, but the Supreme Court has not issued a decision on that. And we also believe that Morris is distinguishable on its facts, specifically in that case the invalidated agreement because the employer in that case were required to waive Section 7 rights and employment was conditioned upon that waiver. In this case, this is a bonus agreement. There's at best disputed evidence as to whether the employee would lose her job. The evidence seems to be that she wouldn't have, and certainly there was no finding in the court below that she would have. So Morris is distinguishable. Going back to a few of the decisions by the trial court, with regard to procedural unconscionability, the court seemed to be very concerned that it was an adhesion contract. And it was a take-it-or-leave-it contract, but that's really all it was. Are you arguing that there isn't procedural unconscionability? Because I thought your briefs just said low level of procedural unconscionability. Exactly, just very, very low level. The district court seemed to put additional weight on that that we don't think exists, and that's our only point with regard to procedural unconscionability. The district court also found the venue provision unconscionable, and they cited that the venue provision in the rules actually says that the parties will agree upon venue, and if they can't agree, then it should be in Minnesota. And C.S. Robinson has agreed to venue the case in California, so there's really no dispute. This isn't a situation that the district court found, as in Armendariz, where you have an illegal provision and then later on the employer says, oh, okay, well, we won't enforce that. The provision in this case, the venue provision, specifically says that the parties will agree on venue, and the parties in this case have agreed. With regard to the modification provision that the district court found unconscionable, in fact, the district court assumed that there could be unilateral modification simply because the rules are contained on the intranet of C.H. Robinson. There was no evidence in the record that anybody could modify the rules. So the district court seemed to just assume, without any evidence in the record, that the modification was unilateral. Even if it was unilateral, California law is very clear in CASAS and Peleg and SERPA that a unilateral modification provision is not unconscionable because it's limited by the covenant of good faith and fair dealing. So there's nothing in that language that actually gave Robinson the right to change it unilaterally. Is that right? That's absolutely correct. Do you want to reserve any time? Yeah, I'll go three minutes. I'll just want to make a couple more points. With regard to the fee provision, that was not unconscionable because it only provides what any court could provide, which is if it's a frivolous case similar to Rule 11 or Code of Civil Procedure 128.7. It's not shifting fees. It's not a fee-shifting statute. And we believe that the incentive bonus agreement is an enforceable arbitration agreement and should have been enforced, and with that, I will reserve my time. Thank you. Good morning. Good morning. Please, the Court. My name is Kyle Nordra-Howgum. I represent the appellee, Lori Ublon. Let me just take one. I want to see if this comes off the table. Does the California Supreme Court recent decision in Balthazar v. Forever 21 foreclosure argument that mere incorporation of the AAA rules into the agreement increases the level of procedural unconscionability? Well, I think the – I think our position – As for now? No, because that's not exactly how our position is. Our position is that those rules were not furnished. There's nothing procedurally unconscionable about the AAA rules themselves. Yeah, but doesn't Balthazar address that? Because it said incorporated by reference, and they weren't there, and Balthazar said, hey, that doesn't matter. I think it perhaps – Tell me where I'm wrong. I don't disagree that that's what Balthazar says, Your Honor. Okay. Then go on. I'm sorry. Then go on. I'm here to support the district court's decision. I think the district court was – every finding by the district court was supported by settled case law. The finding that it was procedurally unconscionable is admitted. It was an adhesion contract. It was obviously imposed by a party of superior power. And I want to quote, because the opponent talks about what the evidence in the record is. Well, the only evidence in the record about how this contract was imposed is what it states itself, which is, quote, in consideration for your continued employment. I thought the employee, your client, testified that when she asked what happens if she didn't sign, he said, well, in that case, you don't get the bonus. I mean, that's what opposing counsel is relying on. So there was no statement or indication that she was going to lose her job. The evidence in the record, the declaration by Ms. Publon, is that she didn't know. She knew one of the repercussions would be that she would not get the money. That's true. And it says that in the preamble. It says for continued employment and for your bonus. That's what it says in the preamble. In consideration of your continued employment. But it doesn't say, and if you don't sign, you'll get fired. I guess you could interpret it as saying that. And that's the testimony in the record, is that she was told. She asked and they said, you won't get your bonus. That's the consequences of not signing was you don't get your bonus, is what she was told by the. . . It is one of the things she was told. Yeah, she didn't ask the question, what would happen to my employment if I didn't. . . Was she ever told that she would lose her job if she didn't sign? That was her understanding, that this was something that was required. That it's in her declaration in the record, Your Honor. And it's her belief. That's her understanding. These are employees. And I want. . . If you look at the agreement itself, I think it's important that. . . Look at the terms that are in here. The terms are her salary. If she doesn't sign this, she doesn't get her salary. The terms are her bonus, yes, as we've discussed. The terms are her at-will employment. And it talks about how this is effective for the following year. These are terms of employment, not just a term of bonus compensation. So I think the district court was reasonably understood that an employee could view this as something they needed to do, that they needed to sign this. Talk about the confidentiality. Certainly. The California authorities, if any, suggest that the California Supreme Court would not decide the confidentiality provision issue in the same way that the California Court of Appeal did in Sanchez v. Carmack. You know, Your Honor, we only had the Ninth Circuit views on this and the cases we cited. But it is California law here. Yeah, it's California law. That's what we have to define. So tell me why this California Supreme Court wouldn't find, wouldn't, you know, what's wrong, why wouldn't they go with Sanchez v. Carmack? Well, I think two reasons. One is that it comes back to the relative advantages and disadvantages between the two parties. I think that R. Mendez discusses that it's important that these statutory cases be fairly litigated on equal footing. And I think the reasoning that an employer who has access to everything and all the prior cases and all the evidence is on stronger footing in view of the confidentiality. And there's a mutuality issue there. The California Supreme Court struck down confidentiality provisions outside of, in other contexts. I mean, is it a general rule of California contract law that confidentiality provisions are substantively unconscionable? I think, I mean, it's a hard thing because we're talking about litigation here. And litigation is presumptively open. These courts are presumptively open. And I think the analogy to private contractual relationship, it doesn't exactly fit what we're talking about, a substitution for litigation. And litigation is presumptively open. And you have to go through very narrow means to close those doors. And there's a reason for that. And that's for the fair adjudication of these statutory claims. So that's the trouble I have making that analogy. I would analogize it more to the procedures we have in court to keep these situations open and apparent to the public and to future litigants. I think, if I could touch on the confidentiality, the second issue I think does relate to the Morris decision, which is that confidentiality prevents employees from engaging in concerted action. And I think that's something that has to be considered when we look at what the court would do with confidentiality, that by its very nature, the confidentiality preventing employees from working together to address a common grievance is in violation of the NLRA and Morris. So I would think that the California Supreme Court would look at that as an important right that would need to allow employees to work in concerted fashion. I think, from my perspective, I think the court said it as two strikes and you're out. Certainly two strikes, and it may not be severable, but we're not at two. We're at three, we're at four, five. I feel like there's eight here, eight different terms that are unconscionable. And I know the trial court only found five, but the trial court didn't reach the representative waiver. Could I just interrupt you for a second on this two strikes rule? So if that rule only applies in the arbitration context, then isn't it preempted by the FAA under the reasoning Concepcion? I mean, I thought that California freely allows severance in contracts outside of the arbitration context. Isn't that correct? I think the rule is the same. So you're saying that outside of the arbitration context, the California rule is if two provisions are unconscionable, then the whole contract would have to be struck. And is there a case on point? I don't have a case specifically on point. I think that two provisions is evidence that it permeates. And then it's up to the court's discretion. The court is well within its discretion to refuse to sever when faced with two or more. So you're saying that's true in any contract in California? Certainly. We don't have a specific case, but that's your understanding. It's all based on the case law under civil code. Is it 1670.5? The permeation and interest of justice language comes from case law outside of the arbitration context. I think in Marathon Entertainment v. Bliss, the California Supreme Court said as long as any illegality is collateral to the main purpose of the contract and it can be extirpated, then the contract should be upheld and it should be severed. Would you agree that that applies in the arbitration context as well? I would agree. And I think that's what brings you back to this. So the test would be whether it can be extirpated and the intent of the contract would still. I think that's part of the test. I think you also have to have the interest of justice and the permeation. If the whole contract. If we could strike the confidential, if we determine that several of the provisions were invalid or illegal, but the rest of the contract could go forward without them, then under California law, that's what we would be required to do. Is that right? I don't see how you can do it when you're faced with so much indication that this contract was designed to deny employee rights. That's the sole purpose of this contract. Here we have the PAGA waiver, which the district court didn't reach because of the uncertainty in the law. There's no uncertainty in the law anymore. This court's ruled on the PAGA waiver. We only said it was unenforceable. We didn't say it was substantively unconscionable. It's an illegal term. We said it was unenforceable and void. Because it was an illegal term. Did we say that it was illegal or did we say it was just unenforceable? It violates public policy. That's, I think, what the court actually ruled. Unenforceable in violation of public policy. Right. So a term in there, in this contract, that violates public policy to the favor of the employer, to the detriment of the employee, is clear evidence that the whole intent of this contract is to deny employee rights. That's the whole intent of this contract, to the lack of mutuality, the waiver of PAGA. These are only designed to the detriment of employee rights in violation of statutes. The requirement to arbitrate is in the detriment of employee rights because the Supreme Court has told us they favor arbitration. Oh, no. I'm not saying that at all. I'm saying a fair arbitration clause would be enforceable, Your Honor. Isn't that the point of the contract is to require arbitration of these disputes? I would respectfully submit it isn't, Your Honor. That this is not a simple let's go arbitrate disputes. We've seen enforceable arbitration agreements. This one is replete with caveats, all designed under the guise of arbitration to deny employee rights. The lack of mutuality. Think about it. All it says is if you bring an equitable claim or a claim for injunctive relief, they can go to court. And in fact, they threatened my client and her employer with that very thing. Now to think that we could just sever that after they've already availed themselves of that threat, of that use, of that term, it's just unfair. But more importantly, if it was mutual, my complaint would be in court because my complaint has a claim for equitable relief. If we're going to make things fair, then why can't my client avail themselves of that clause? Well, Mr. Norter, can I ask a question? Certainly. Your client, who is an employee, has the right to agree with other employees and bargain collectively, correct? Correct. The employer doesn't have that right. That's an antitrust violation. So there's not total mutuality for the employer either, is there? This contract prevents my client in many regards from combining with other employees. I understand that. So your client has an advantage by being able to bargain collectively, which the employer does not have. So there isn't mutuality in that sense, is there? Well, the employer relationship is never mutually equal. Well, I agree with you. So when you're talking about mutuality, it's selective mutuality. Well, I think when we're talking about an employment contract and specifically an arbitration agreement where we're going to arbitrate statutory disputes in lieu of going to court, mutuality is the cornerstone of fairness. And again, I think that just brings up the fact that my client's rights are being abridged by this agreement because she is being denied her very right to combine and collectively work with other employees for fair employment conditions is something that's protected by law, and that's something that's being abridged here as well. So I just want to get back to the... You have 43 seconds. Oh, I appreciate that. Thank you for wrapping up. So there's no decision out there that upholds an agreement, arbitration or otherwise, where there's five provisions that violate public policy, all to the advantage of the stronger party, all to the disadvantage of the weaker employee. Even the cases they cite in terms of severance, they deal with a single offending provision, which could just be redlined. Here, for example, I think it highlights the mutuality carve-out in favoring C.H. Robinson. My client would have it written that that would apply mutually rather than somebody just striking it out entirely, because then my client would be able to bring her complaint in court without limitation. All right, we've gone into overtime, so... I thank you for your time, Your Honors, and I appreciate your consideration. All right, thank you. Just very briefly, I just want to point out a couple of things. With regard to the condition of employment, I would urge the Court to look at the record at page 157, which is the e-mail correspondence between the appellee and her manager, where they talk about the effect of not signing the agreement, and there's nothing in there about her being terminated. It simply and very clearly says you won't get the bonus. With regard to confidentiality, I think that the Tompkins case that we submitted yesterday that was decided by this Court in August makes very clear that California requires courts to interpret contracts the same, whether they're arbitration contracts or otherwise. And California can certainly enforce confidentiality agreements. There's no limit of talking to other people or obtaining investigatory information, as was the case in Ting and Davis. With regard to severing any unconscionable provisions, again, Tompkins is instructive, because it tells us that the courts must treat arbitration agreements the same as other contracts. And Marathon Entertainment and the Bierbauer case that is contained in our brief reflect that courts will sever as many terms as may be unconscionable, provided the purpose of the contract is fulfilled. And in this case, the purpose of the contract is to arbitrate differences. And certainly, if the Court finds that confidentiality is unconscionable, it could be severed as well as anything else. And then finally, with regard to the PAGA issue in the Mahaman v. Uber Technologies case, the Court struck or refused to enforce the PAGA provision, but remanded the case and ordered the rest of it be arbitrated on an individualized basis. And with that, I will submit, unless there are any questions. The next matter on calendar is Margaret Miranda v. Sally Jewell. Case number 15-55245. That matter has been submitted on the briefs and will be submitted as of this date.
judges: Callahan, Bea, Ikuta